IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

UNITED STATES OF AMERICA,

v.  Criminal No. 3:23cr038 (DJN)

KEITH TRAVERS,
Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Keith Travers' ("Defendant") Motion to Suppress ("Def. Mot.") (ECF No. 24). Defendant moves the Court to suppress all statements made during Defendant's post-arrest interrogation on August 19, 2022, because he was allegedly intoxicated and under the influence of drugs. Defendant further moves to suppress all statements made on April 7, 2023, due to the Government allegedly violating Defendant's Sixth Amendment Right to Counsel. (Def. Mot. at 1.) The Government responded in opposition ("Resp.") (ECF No. 27), Defendant replied ("Reply") (ECF No. 30) and the Court conducted a hearing on the motion on September 22, 2023, rendering this matter ripe for the Court's consideration. For the reasons set forth below, Defendant's Motion (ECF No. 24) is DENIED IN PART and GRANTED IN PART.

### I. BACKGROUND

The events leading to Defendant's arrest, interrogation and the alleged infringement on his constitutional rights began on August 6, 2022, when Defendant purportedly conspired to carjack a third individual in Richmond, Virginia. (Resp. at 1.) Defendant and his accomplice met a third person with the alleged intent to purchase a catalytic converter, but at this meeting Defendant brandished a firearm, pointed it at the third person, the accomplice stole the third person's vehicle and Defendant drove away in the 2014 White Mazda in which he arrived. (*Id.*)

On August 19, 2022, a Richmond Police Detective spotted the White Mazda involved in the carjacking and followed it to a parking lot. (*Id.*) Once stopped, Defendant exited the vehicle, but upon seeing the detectives approaching returned to the driver's seat of his vehicle and "began moving around inside." (*Id.*) at 2. At that point, the detectives drew their weapons and Defendant sped off, striking a detective in the process. (*Id.*) Three days later, the White Mazda was once again spotted by Richmond police. (*Id.*) When they attempted to stop the vehicle, it led the officers on a high-speed chase that resulted in Defendant crashing his vehicle. (*Id.*) At this point, Defendant led officers on a foot chase. Once surrounded, Defendant threw a semi-automatic pistol to the ground and was arrested. (*Id.*)

Shortly after, Defendant was interrogated by Detective Gutierrezr. (*Id.*) A proper *Miranda* warning ensued[1] and Defendant spoke with Detective Gutierrez for nearly forty minutes before invoking his right to counsel, upon which Detective Gutierrez immediately ended the interrogation. The statements that Defendant made during this interrogation, while allegedly under the influence of drugs and alcohol, are the subject of the alleged *Miranda* violation. The entire interview session was video taped and the video constitutes the only evidence entered by the parties at the September 22, 2023 suppression hearing.

Defendant's Motion to Suppress, (ECF No. 24), outlines a second interrogation that occurred on April 7, 2023, after he was transferred from state to federal custody. However, as noted in the Court's October 10, 2023 Order, (ECF No. 36), the Government failed to file its brief as ordered by the Court on September 22, 2023, (ECF No. 34). Accordingly, the Court held that the Government forfeited its ability to admit the Defendant's April 7, 2023 statements at

---

[1] That Defendant was properly Mirandized is not in dispute.

trial. (ECF No. 36) The Court reiterates that it makes no representations about the merits of suppressing statements from the second interrogation.

## II. ANALYSIS

### A. Defendant's statements during the August 19, 2022 interrogation were made after a knowing and voluntary *Miranda* waiver and are therefore admissible.

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that an in-custody defendant is entitled to know before questioning that they have "the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." 384 U.S. at 479. If *Miranda* warnings are not provided, any statements made during that interrogation may be suppressed. Likewise, if *Miranda* warnings are provided but they are waived, the waiver is ineffective unless the defendant voluntarily, knowingly and intelligently waived their rights. *Id.*

Defendant asserts that he did not knowingly or intelligently waive his *Miranda* rights, because he was under the influence of heroin and was suffering from severe sleep deprivation at the time of waiver. (Def. Mot. at 1–2.) Defendant does not provide any evidence that he was under the influence of heroin besides his own assertions in his motion and the video of the interrogation itself. In any case, sleep deprivation and drug use do not render a waiver ineffective per se. Rather, in the Fourth Circuit, "whether a person is too affected by alcohol or other drugs voluntarily and intelligently to waive his rights is one of coherence, of an understanding of what is happening." *United States v. Smith*, 608 F.2d 1011, 1012 (4th Cir. 1979); (Resp. at 5–6) (citing authority).

Indicia of coherence and an understanding of "what is happening" relate to whether a defendant understands that they are being questioned such that they realize the import of waiving

3

their *Miranda* rights. For instance, in *United States v. Walker*, the Fourth Circuit held that the defendant adequately waived his *Miranda* rights despite seeming "a little bit out of it" because the evidence showed he was "aware of and understood his rights." 607 Fed. Appx. 247, 257 (4th Cir. 2015). And in *Montague*, the court held that even though a defendant was under the influence of heroin and fell asleep during the interrogation, his waiver was knowing and intelligent because he knew the date and time of the interrogation, which indicated coherency. *United States v. Montague*, 2022 WL 14915631, at *3 (W.D. Va. Oct. 25, 2022). Here, the Government must show that Defendant exhibited coherence by a preponderance of the evidence. *United States v. Giddins*, 858 F.3d 870, 881 (4th Cir. 2017).

In the video ("Vid.") recording of the interview in question, Defendant coherently replied to Detective Gutierrez's questions. Indeed, not a single response over the course of Defendant's forty-minute interview appeared "incoherent." To be sure, Defendant appears sleepy and groggy, as his posture indicates. Despite this, Defendant exhibited various indicia of coherency.

For instance, Defendant requested water in a clear voice within a minute of the interview starting. (Vid. at 0:09.) When asked to stand, Defendant did so while handcuffed and without assistance from the officers, exhibiting no apparent impairment of his motor skills. (Vid. at 0:50.) Upon a bottle of water being placed on the table in front of him, Defendant asked if he could drink it. (Vid. at 1:38–2:00.) The officers said that he could, and Defendant promptly drank its entirety, bringing it to his mouth and placing it back on the table without apparent motor difficulty and then thanked the officer. (*Id.*) For over ten minutes, Defendant was left alone and unbothered in the interrogation room while one officer watched over him. (Vid. at 2:32–14:45.) During this time, Defendant made no gesture, physically or vocally, that he was under the influence of any drugs or alcohol or needed assistance. Once the interrogation began,

4

Defendant promptly and without slurring replied "yes" to each of Detective Gutierrez's background questions. Defendant listed the names, spellings, addresses and phone numbers of two relatives without any apparent difficulty. (Vid. at 17:30–19:50.) Defendant also recalled eluding the police three days earlier, the car that he was driving at the time, where he located his hands during the encounter, why he drove away and his accomplice. (Vid. at 21:40–23:00; 23:50–25:00.) After being shown incriminating photos of the August 3, 2022 carjacking, Defendant even had the state of mind to invoke his Constitutional rights, his right to counsel, further indicating that he was coherent and understood his rights. (Vid. at 38:00–39:30.)

These responses are not the musings of an unknowing, unwitting defendant. Instead, they indicate that Defendant knew that he was being interrogated, understood that he had waived his rights and that he had the requisite mental faculty to do so. As such, the Court finds as a matter of fact that Defendant knowingly and voluntarily waived his Constitutional rights. Accordingly, Defendant's Motion to Suppress based on a violation of his *Miranda* rights is hereby DENIED and the statements made during the August 19, 2022 interview are therefore admissible at trial.

### III.   CONCLUSION

For the reasons set forth above, Defendant's Motion to Suppress (ECF No. 24) is DENIED as to the August 19, 2022, interrogation. The motion is GRANTED as to the April 7, 2023 interrogation, because the Government failed to timely file its briefing and thus forfeited its right to admit that evidence at trial. (ECF No. 36).

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

/s/
David J. Novak
United States District Judge

Richmond, Virginia
Date: October 13, 2023